**EXHIBIT 1**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

|  |  |
|---|---|
| TECHE VERMILION SUGAR CANE GROWERS ASSOCIATION, INC., et al., | Civil Action No. 6:23-cv-00831 |
| Plaintiffs, | Judge Robert B. Summerhays |
| v. | Magistrate Judge Carol B. Whitehurst |
| JULIE A. SU, et al., |  |
| Defendants. |  |

**MEMORANDUM OF AMICI CURIAE JESUS IGNACIO DIAZ CASTRO, RICARDO GUADALUPE ARCE RUIZ, JAMES SIMPSON, AND FARMWORKER JUSTICE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

INTERESTS OF AMICI CURIAE ......................................................................... 1

BACKGROUND ................................................................................................... 3

ARGUMENT ........................................................................................................ 6

I.  DOL's use of an OEWS-based AEWR for occupations not included in the FLS is reasonable. ........................................................................................... 6

II.  If an injunction is issued, Plaintiffs must provide adequate security to workers. .......... 9

CONCLUSION .................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*AFL-CIO v. Brock*,
    835 F.2d 912 (D.C. Cir. 1987) ................................................................. 6

*Feller v. Brock*,
    802 F.2d 722 (4th Cir. 1986) ................................................................ 12

*Florida Fruit & Vegetable Ass'n. v. Brock*,
    771 F.2d 1455 (11th Cir. 1985) ........................................................ 6, 11

*Frederick County Fruit Growers Ass'n v. Martin*,
    968 F.2d 1265 (D.C. Cir. 1992) .......................................................... 12

*Frederick County Fruit Growers Ass'n v. Brock*,
    Civ. No. 85-0142-D (W.D. Va. Dec. 17, 1985) .................................... 11

*Freeman v. USDA*,
    350 F. Supp. 457 (D.D.C. 1972) ......................................................... 12

*NAACP v. Donovan*,
    558 F. Supp. 218 (D.D.C. 1982) ......................................................... 12

*Shoreham Cooperative Apple Producers Ass'n v. Donovan*,
    764 F.2d 135 (2d Cir. 1984) ................................................................ 11

*Tri-County Growers v. Brock*,
    Civ. No. 85-0038-M (N.D. W.Va. Aug. 28, 1985) ............................... 12

*Trump v. International Refugee Assistance Project*,
    137 S. Ct. 2080 (2017) .......................................................................... 9

*United Farm Workers v. Solis*,
    697 F. Supp. 2d 5 (D.D.C. 2010) .......................................................... 8

*Virginia Agricultural Growers Ass'n v. Donovan*,
    774 F.2d 89 (4th Cir. 1985) ............................................................ 6, 11

*Virginia Agricultural Growers Ass'n v. Donovan*,
    597 F. Supp. 45 (W.D. Va. 1985) ........................................................ 10

**Statutes**

8 U.S.C. § 1188 ........................................................................................................ 3

8 U.S.C. § 1188(a)(1) ............................................................................................. 3, 4

8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) ............................................................................ 3

**Regulations**

20 C.F.R. § 655.100 .................................................................................................. 3

20 C.F.R. § 655.103(b) ............................................................................................. 4

20 C.F.R. § 655.120 .................................................................................................. 4

20 C.F.R. § 655.120(a) ............................................................................................. 2

20 C.F.R. § 655.120(b)(1)(i)(A) .............................................................................. 5

20 C.F.R. § 655.120(b)(1)(i)(B)–(C) ...................................................................... 5

20 C.F.R. § 655.120(b)(1)(ii) .................................................................................. 5

20 C.F.R. § 655.121(a)(1) ........................................................................................ 4

20 C.F.R. § 655.122 .................................................................................................. 4

20 C.F.R. § 655.122(q) ............................................................................................ 4

20 C.F.R. § 655.135 .................................................................................................. 4

20 C.F.R. § 655.182(d)(1)(i) .................................................................................... 4

29 C.F.R. § 501.0 to 501.47 ..................................................................................... 3

*Adverse Effect Wage Rate Methodology for the Temporary Employment of H-2A Nonimmigrants in Non-Range Occupations in the United States,*
88 Fed. Reg. 12,760 (Feb. 28, 2023) ............................................... 1, 5, 6, 7, 8

*Labor Certification Process for the Temporary Employment of Foreign Workers in Agriculture in the United States: Adverse Effect Wage Rates for Non-Range Occupations in 2023,*
87 Fed. Reg. 77,142 (Dec. 16, 2022) ..................................................... 2, 3

*Temporary Agricultural Employment of H-2A Aliens in the United States: Final Rule,*
75 Fed. Reg. 6,844 (Feb. 12, 2010) .............................................................. 7

*Temporary Agricultural Employment of H-2A Aliens in the United States; Modernizing the Labor Certification Process and Enforcement,*
73 Fed. Reg. 77,110 (Dec. 18, 2008) ............................................................................ 7

**Other Authorities**

Bureau of Labor Statistics*, May 2022 State Occupational Employment and Wage Estimates: Louisiana*, https://www.bls.gov/oes/current/oes_la.htm ............................................................. 2

Bureau of Labor Statistics*, May 2022 State Occupational Employment and Wage Estimates: Mississippi*, https://www.bls.gov/oes/current/oes_ms.htm ........................................................... 3

## INTRODUCTION

Amici Jesus Ignacio Diaz Castro, Ricardo Guadalupe Arce Ruiz, James Simpson, and Farmworker Justice submit this memorandum in support of Defendant's opposition to Plaintiffs' motion for a preliminary injunction against application of the final rule of the U.S. Department of Labor (DOL) titled *Adverse Effect Wage Rate Methodology for the Temporary Employment of H-2A Nonimmigrants in Non-Range Occupations in the United States*, 88 Fed. Reg. 12,760 (Feb. 28, 2023) ("2023 Rule"). The 2023 Rule, which revises the methodology DOL uses to determine the statutorily mandated hourly Adverse Effect Wage Rate (AEWR) for about two percent of H-2A worker positions, represents a reasonable and reasoned attempt to fulfill DOL's statutory duty to ensure that H-2A labor does not have an adverse effect on the wages of U.S. farmworkers, while responding to problems that arose under the superseded regulation. Amici largely agree with the arguments in DOL's opposition explaining that Plaintiffs have failed to establish that they are entitled to the extraordinary relief of a preliminary injunction. Amici submit this memorandum to further explain that the 2023 Rule's reliance on the Occupational Employment and Wage Statistics (OEWS) survey to set wages for occupations not included in the Farm Labor Survey (FLS) is reasonable and is designed to close a loophole that certain employers exploited to pay lower wages, and to emphasize that any preliminary relief should be conditioned on posting security to protect potentially injured workers.

## INTERESTS OF AMICI CURIAE

Amici Diaz Castro and Arce Ruiz are truck drivers and citizens of Mexico. They have been employed in the United States as guestworkers under the H-2A program and expect to be so employed in the future. Their duties typically involve driving trucks off farm property to haul agricultural commodities to market, to processing or packing facilities, or to storage. Each has

worked as an H-2A sugarcane hauler in Louisiana, driving heavy trucks to transport harvested sugarcane from farms to a mill for processing. They are among the plaintiffs in *Alvarez Barron v. Sterling Sugars Sales Corp.*, No. 6:21-cv-03741 (W.D. La.), a case currently pending before this Court. Had the 2023 Rule been in effect at the time they worked for Sterling Sugars, the plaintiffs in *Alvarez Barron* would have been paid an AEWR based on the Louisiana wage for Heavy and Tractor-Trailer Truck Drivers (SOC Code 53–3032), rather than an AEWR based on the Louisiana wage for Agricultural Equipment Operators (SOC Code 45–2091). Currently, the former is $23.16 per hour and the latter is $13.67 per hour. *Compare* BLS*, May 2022 State Occupational Employment and Wage Estimates: Louisiana*, https://www.bls.gov/oes/current/oes_la.htm, *with Labor Certification Process for the Temporary Employment of Foreign Workers in Agriculture in the United States: Adverse Effect Wage Rates for Non-Range Occupations in 2023*, 87 Fed. Reg. 77,142, 77,143 (Dec. 16, 2022).

Amicus James Simpson is a U.S. citizen who resides in Sunflower, Mississippi. He earns his living as a truck driver, hauling harvested agricultural commodities over public highways from farms to storage or processing facilities. For more than a decade, he has worked for a grower participating in the H-2A program and plans to either return to that job or accept other work as a truck driver for another H-2A grower in his area this harvest season. In practice, the AEWR serves as the minimum wage for this work. *See* 20 C.F.R. § 655.120(a) (providing that an H-2A employer must pay the highest of the AEWR, any prevailing wage rate, the collective bargaining wage, the federal minimum wage, or the state minimum wage). Under the methodology required by the 2023 Rule, the current AEWR for his occupation, which is light truck driver (SOC Code 53-3033), is $20.42 per hour, which is higher than the AEWR of $13.67 per hour for Agricultural Equipment Operators (SOC Code 45–2091) which would have applied under the former regulation. *Compare*

BLS, *May 2022 State Occupational Employment and Wage Estimates: Mississippi*, https://www.bls.gov/oes/current/oes_ms.htm, *with* 87 Fed. Reg. 77,142.

Amicus Farmworker Justice is a nonprofit organization that seeks to empower migrant and seasonal farmworkers to improve their living and working conditions, immigration status, health, occupational safety, and access to justice. Farmworker Justice accomplishes these aims through policy advocacy, litigation, training and technical assistance, coalition-building, and public education. Farmworker Justice represents and provides services to U.S. workers and H-2A workers whose wages will be determined by the 2023 Rule.

## BACKGROUND

The H-2A program was created by the Immigration and Nationality Act (INA), 8 U.S.C. § 1188, and is implemented, as relevant here, through regulations set out at 20 C.F.R. §§ 655.100 to 655.185 and 29 C.F.R. §§ 501.0 to 501.47. The H-2A program authorizes the admission of nonimmigrant workers to perform agricultural labor or services of a temporary nature. An agricultural employer in the United States may import foreign workers to perform such labor if DOL certifies that (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1), and 20 C.F.R. § 655.100. Individuals admitted in this fashion are commonly referred to as H-2A workers.

Eligible employers must complete a multi-step process to participate in the H-2A program. Prior to filing a petition with U.S. Citizenship and Immigration Services (USCIS), a division of the Department of Homeland Security, the employer must obtain a temporary labor certification from DOL's Office of Foreign Labor Certification. DOL must certify that "there are not sufficient

workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition," and that "the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1188(a)(1).

DOL regulations have long set out the requirements for obtaining a temporary labor certification. The application must include a job offer, commonly referred to as a "clearance order" or "job order." 20 C.F.R. § 655.121(a)(1). To ensure DOL complies with its statutory duty to ensure that the H-2A program does not depress the wages of U.S. agricultural workers, DOL regulations set minimum levels for benefits, wages, and working conditions to be included in the offer. 20 C.F.R. §§ 655.120, .122, .135. Among these regulations is the "offered wage" rate provision, which requires that for every hour or portion thereof worked during a pay period, the employer must pay the workers the highest applicable wage. 20 C.F.R. § 655.120, .122(l). For purposes of this lawsuit, that wage is the AEWR. The AEWR is designed to follow trends of the agricultural labor market, adjusting to meet wage averages as determined by supply and demand. In the absence of a separate contract between the H-2A employer and the worker, the clearance order, with the offered wage rate, is the contract. 20 C.F.R. § 655.122(q). The employer must pay this wage not only to H-2A workers, but also to U.S. workers in corresponding employment. *See* 20 C.F.R. § 655.103(b), .182(d)(1)(i).

Since 1987, except for an 18-month period in 2009-2010, DOL has set the AEWR using the annual Farm Labor Survey (FLS) conducted by the U.S. Department of Agriculture. Under the 2023 Rule, the AEWR for the "vast majority" of agricultural workers in non-range occupations, which includes about 98 percent of H-2A job opportunities, will continue to be based on the average hourly wage rate for "field and livestock worker[s]" for a state or region as reported by

the FLS. 88 Fed. Reg. at 12,760, 12,766–69; *accord* 20 C.F.R. § 655.120(b)(1)(i)(A) (codifying this principle). When FLS wage data is not available for field and livestock workers in a particular area, DOL will generally use Occupational Employment and Wage Statistics (OEWS) survey reports to set the AEWR for such field and livestock workers. 88 Fed. Reg. at 12,769–70; *accord* 20 C.F.R. § 655.120(b)(1)(i)(B)–(C) (codifying this principle). DOL will continue to apply a single AEWR to all such H-2A jobs certified in a state. *See* 88 Fed. Reg. at 12,761.

For certain specialty occupations not in the category of field and livestock workers, such as supervisors, farm construction workers, farm mechanics, and truck drivers, the 2023 Rule sets AEWRs for each state using the applicable Standard Occupational Classification (SOC) code for the occupation. 88 Fed. Reg. at 12,770–71; *see also* 20 C.F.R. § 655.120(b)(1)(ii) (codifying this principle). DOL anticipates that the AEWR for workers in these SOC codes will increase more as compared to the AEWR increases for workers whose AEWRs are set by the FLS. 88 Fed. Reg. at 12,771–72.

DOL issued the 2023 Rule to fix two methodological flaws in the prior rule that resulted in an adverse effect on the wages of U.S. farmworkers. *Id.* at 12,761. First, the former rule's use of FLS wage data for field and livestock workers to set a single AEWR for each state, including for jobs such as truck drivers in SOC codes not encompassed by the field and livestock classification and not included in the FLS, did not reflect the actual wages of workers in those excluded SOC codes, which "generally account for more specialized or higher paid job opportunities." *Id.* The rule thus failed adequately to guard against an adverse effect on wages. *Id.* Second, relying solely on FLS data did not permit DOL to set AEWRs for all geographical areas in the United States. *Id.* at 12,761–62.

Correcting these flaws, the 2023 Rule, by using the OEWS as an additional data source to determine AEWRs where the FLS does not provide relevant information, takes a "reasonable approach," *id.* at 12,762, to balancing the interests of growers and farmworkers. It ensures "that the employment of H-2A workers will not have an adverse effect on the wages of agricultural workers in the United States similarly employed, while ensuring that employers can access legal agricultural labor," and it accommodates DOL's need for "the sound administration of the H-2A program in deciding how to administer the AEWR." *Id.* at 12,761.

## ARGUMENT

### I.    DOL's use of an OEWS-based AEWR for occupations not included in the FLS is reasonable.

Through the INA, Congress has entrusted DOL with defining "adverse effect" and addressing how it should be measured. *AFL-CIO v. Brock*, 835 F.2d 912, 914 (D.C. Cir. 1987). DOL has broad discretion to set AEWRs in accordance with "any number of reasonable formulas," and its choice of rates is entitled to deference. *Fla. Fruit & Vegetable Ass'n. v. Brock*, 771 F.2d 1455, 1459–60 (11th Cir. 1985); *see also Va. Agric. Growers Ass'n v. Donovan*, 774 F.2d 89, 93 (4th Cir. 1985) (upholding DOL's choice of AEWR methodology).

Plaintiffs do not dispute that wage rates vary for different agricultural occupations and that the FLS-based AEWR for combined field and livestock workers is limited to a subset of only six SOC codes.[1] Accordingly, the FLS can, in Plaintiffs' words, provide "the best source of information for agricultural wages," Pls.' Mem. 3, only for the six occupations included in the

---

[1] The SOC codes associated with the field and livestock workers (combined) category (sometimes referred to as "the Big Six"), and which will continue to be subject to FLS-based AEWRs, are: (1) 45-2041 Graders and Sorters, Agricultural Products; (2) 45-2091 Agricultural Equipment Operators; (3) 45-2092 Farmworkers and Laborers, Crop, Nursery and Greenhouse; (4) 45-2093 Farmworkers, Farm, Ranch, and Aquacultural Animals; (5) 53-7064 Packers and Packagers, Hand; and (6) 45-2099 Agricultural Workers – Other.

survey, which cover the vast majority of H-2A job opportunities. The FLS is silent as to wage rates for SOC codes for other occupations. Under the 2023 Rule, DOL will use OEWS data to calculate the AEWR only for occupations that are *not* included in the FLS. The decision to use OEWS data where FLS data is unavailable is reasonable and will affect only about two percent of H-2A jobs. For those two percent, use of OEWS data for occupations not included in the FLS will fulfill DOL's statutory responsibility to ensure that the employment of H-2A workers will not depress the wages of U.S. workers similarly employed.

The OEWS includes workers in the agricultural sector whose occupations are not included in the FLS. Plaintiffs emphasize that OEWS wage data includes information about workers in all sectors of the economy, but they fail to acknowledge that the OEWS collects wage data from farm labor contractors that support fixed-site agricultural employers. For example, many H-2A labor contractors employ H-2A workers to drive heavy trucks to provide hauling services to farmer customers. None of the workers paid by such H-2A labor contractors is included in the FLS, but the wages paid to such workers is included in the OEWS. The chart attached as Exhibit A reflects a sample of job orders filed by H-2A labor contractors that employ H-2A workers to drive heavy trucks.

In the past, DOL relied on FLS data in large part because farm owners and operators employed a substantial majority of the nation's farmworkers. *See Temporary Agricultural Employment of H-2A Aliens in the United States: Final Rule*, 75 Fed. Reg. 6,844, 6,901 (Feb. 12, 2010). However, as noted in the 2023 Rule, there has been a steady increase in the percentage of farmworkers hired through labor contractors. In 2008, farm labor contractors hired an estimated 30 percent of farmworkers in H-2A jobs. *See Temporary Agricultural Employment of H-2A Aliens in the United States; Modernizing the Labor Certification Process and Enforcement: Final Rule*,

73 Fed. Reg. 77,110, 77,174 (Dec. 18, 2008). By 2022, this percentage had increased to 43 percent. *See* 88 Fed. Reg. 12,760, 12,770 n.60.

As Plaintiffs point out, for an 18-month period in 2009-2010, DOL computed the AEWR for all H-2A workers using the OEWS. *See* Pls.' Mem. 4 n.8. Although the OEWS at that time was based on the wages of less than a third of farmworkers, DOL's use of the dataset was upheld. *United Farm Workers v. Solis*, 697 F. Supp. 2d 5, 10 (D.D.C. 2010) (holding that the agency provided "an explanation that is reasonable and consistent with the regulation's language and history, thus supporting the DOL's objectives") (citation and internal quotation marks omitted). In issuing the 2023 Rule, DOL considered the available sources of information and, relying on its expertise, selected the OEWS as the data source best suited to prevent an adverse effect on the wages of workers in occupations not included in the FLS. Nothing more is required.

Part of the impetus for the 2023 Rule was to close a loophole that had allowed employers to pay H-2A workers as though they were performing general farmworker duties such as picking crops in the field, even when their work consisted entirely of higher-skilled work such as driving heavy trucks over public roads, which involves "the same or similar skills, qualifications, and tasks, whether the commodity is agricultural or nonagricultural in nature." 88 Fed. Reg. 12,782. Indeed, some employers shifted their fleet of heavy truck drivers from U.S. workers to H-2A workers to take advantage of the flaw in the prior rule and pay the drivers as though they were field laborers rather than drivers of heavy trucks. The exploitation of this loophole undermines the goals of the H-2A wage protections, which aim to prevent employers from using the H-2A program to drive down wages or replace U.S. workers with H-2A workers.

The *Alvarez Barron* case pending in this Court provides an example. There, prior to 2018, a sugar mill and its related entities employed U.S. workers as heavy truck drivers to transport

harvested sugarcane from dozens of independent sugarcane farms in Louisiana back to the mill. *See* Plaintiffs' Statement of Undisputed Material Facts, Facts 21–23, *Alvarez Barron v. Sterling Sugar Sales Corp.*, No. 6:21-cv-03741 (W.D. La. June 30, 2023), ECF No. 103-2. Beginning in 2018, the mill began using a subsidiary as an H-2A labor contractor to employ foreign guestworkers to do that work. *Id.*, Facts 33, 41. Seizing on the fact that the prior rule provided for H-2A workers to be paid an AEWR based on the six agricultural occupations included in the FLS, the employer paid the workers the AEWR for H-2A farmworkers rather than the wage rates from the OEWS for heavy truck drivers.[2] *Id.*, Facts 103, 143.

The 2023 Rule aims to stop such abuses and to prevent an adverse effect on the wages of similarly employed U.S. workers by requiring H-2A employers to pay the OEWS wage rates associated with specialized jobs that require greater skills than the occupations included in the FLS.

## II.    If an injunction is issued, Plaintiffs must provide adequate security to workers.

If the Court concludes that Plaintiffs have carried their burden to show entitlement to a preliminary injunction, any injunction should be crafted to preserve the ability of farmworkers to recover wages that will be owed if the 2023 AEWRs ultimately take effect. *See, e.g.*, *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) ("[A] court need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular

---

[2] The plaintiffs in *Alvarez Barron* also argue that the truck-driving work performed by the H-2A workers for the labor contractor was not agricultural and, thus, under the terms of the workers' H-2A contracts and the H-2A regulations, they were entitled to overtime and the OEWS rate paid to H-2B non-agricultural workers. They further allege that their employer was emboldened to pay the unlawfully low AEWR by holding itself out to DOL as an agricultural employer employing workers in agricultural field work, despite that the plaintiff H-2A workers performed no such work. *See* Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment, *Alvarez Barron v. Sterling Sugar Sales Corp.*, No. 6:21-cv-03741 (W.D. La. June 30, 2023), ECF No. 103-1.

9

case.") (citation and internal quotation marks omitted). Rather than the broad order that Plaintiffs request enjoining enforcement of the 2023 Rule in its entirety, the Court should condition any injunction on Plaintiffs' agreement to the following conditions:

> (1) that all employers submitting H-2A labor certification applications subject to such an injunction pay the 2023 AEWR (if it is upheld) retroactively to all H-2A and similarly employed U.S. workers;

> (2) that all employers applying for or obtaining H-2A labor certification applications subject to such an injunction agree to (a) pay the difference between the 2023 AEWR (or the wage actually paid if higher) and the current AEWR for each hour worked into an escrow account (or post security for that amount) on a monthly basis as the wages are earned, and (b) preserve the wage records supporting the amount escrowed or secured until this case is concluded and the escrow funds disbursed to employers or to workers; and

> (3) that all employers applying for or obtaining H-2A labor certification applications subject to such an injunction notify their workers (a) of the existence of the escrow or security and the promise to pay the 2023 wage when established, and (b) of the importance of keeping their employers and the parties to this suit informed of any changes at their permanent home addresses in their countries of origin, telephone numbers, and email addresses.

Such conditions would be adequate to protect the interests of Plaintiffs because, if the lawsuit is successful, employers will recover promptly any escrowed or secured funds, with interest, that exceed the lawful AEWR as determined by this Court. At the same time, these conditions are needed to protect agricultural workers because, if Plaintiffs do not prevail, the workers will be able to recover the disputed wages. Although there is no doubt that a preliminary injunction will nonetheless harm the workers—because they will only be able to compete for jobs on the basis of a *promise* to pay the 2023 AEWR when it is ultimately established, rather than receive payment of that wage as it is earned—the above conditions would reduce that harm.

These conditions are not novel. Courts have imposed such conditions on preliminary injunctions on behalf of employers challenging DOL wage rates for temporary foreign workers. For example, in *Virginia Agricultural Growers Ass'n v. Donovan*, 597 F. Supp. 45, 47 (W.D. Va.

1985), tobacco growers sought to challenge the validity of DOL's AEWR methodology. The employers sought temporary and preliminary relief from the wage rate for the same reasons that Plaintiffs here do—*i.e.*, once they paid the wages calculated pursuant to the challenged methodology, there would be no way to recover the wages if the AEWR methodology was ultimately found to be unlawful. The Court granted the injunction, but to ensure that workers (including workers recruited in the meantime) would receive the wages if the rate was ultimately upheld, the court required the employers to agree in their labor certification applications to pay the AEWR ultimately approved by the court. Logistically, this required placing the disputed wages in an escrow account monthly or, alternatively, providing bank letters of credit sufficient to cover the wages and interest on the wages. *See Va. Agric. Growers Ass'n, Inc. v. Donovan*, Civ. No. 83-0146-D, Temporary Injunction Order for 1985, at 3–5 (W.D Va. Apr. 26, 1985) (attached as Ex. B). In addition, the order required the employers to obtain the addresses of all workers whose wages were being escrowed and to provide workers with a notice explaining the escrow account and the need for the workers to keep their employer informed of their addresses until the case was resolved. *Id.* at 5–6. DOL's AEWR methodology was ultimately upheld, *Donovan*, 774 F.2d at 89, and the escrow funds were distributed to the workers. Preliminary injunctions were granted in similar challenges to the 1983 AEWR methodology in other circuits, *see, e.g.*, *Fla. Fruit & Vegetable Ass'n*, 771 F.2d 1455; *Shoreham Coop. Apple Producers Ass'n v. Donovan*, 764 F.2d 135 (2d Cir. 1984), and in both challenges, the lower courts conditioned the injunction on escrow requirements similar to those ordered in the Fourth Circuit case.

In *Frederick County Fruit Growers Ass'n v. Brock*, Civ. No. 85-0142-D (W.D. Va. Dec. 17, 1985), apple and tobacco employers challenged the legality of DOL's H-2A piece rate rule. The court granted an injunction but conditioned it on the employers' escrowing the disputed wages

as they were earned, maintaining records, and providing notice to workers explaining the existence of the escrow account. *Id.*, Temporary Restraining Order ¶¶ 1–4 (attached as Ex. C). To ensure that the order was complied with, the court required the employers to obtain signed acknowledgements from their workers stating that they had received the notices. *Id.* ¶ 4. A similar injunction conditioned on escrowing disputed piece rates was entered in *Tri-County Growers v. Brock*, Civ. No. 85-0038-M, Order at 2–5 (N.D. W.Va. Aug. 28, 1985) (attached as Ex. D). The escrow funds in both cases were ultimately paid to the workers when the D.C. Circuit upheld DOL's piece rate rule, *see Frederick Cty. Fruit Growers Ass'n v. Martin*, 968 F.2d 1265, 1276 (D.C. Cir. 1992), and the Fourth Circuit dissolved the *Tri-County Growers* injunction, *see Feller v. Brock*, 802 F.2d 722, 731 (4th Cir. 1986) (ordering "immediate distribution of the funds escrowed pursuant to this injunction"); *see also NAACP v. Donovan*, 558 F. Supp. 218, 225–26 (D.D.C. 1982) (in challenge to DOL's failure to promulgate 1982 AEWRs, granting final relief and ordering funds escrowed by employers pursuant to preliminary injunction to ensure payment of 1982 AEWR, once set, to be paid to workers); *Freeman v. USDA*, 350 F. Supp. 457, 461–62 (D.D.C. 1972) (in challenge to Department of Agriculture's failure to issue a "fair and reasonable wage" for 1971 as required by the Sugar Act, entering a preliminary injunction restraining the agency "from making any further subsidy payments" to employers to ensure that employers reimbursed workers for the difference between the wage paid and the lawful 1971 wage, to be later set, for work already performed).

Here, if a preliminary injunction were granted, similar conditions would be critical to ensure that workers received the disputed wages if the injunction were dissolved or reversed on appeal. Without such conditions, Plaintiffs would escape liability for the 2023 AEWR, even if that

rate were later upheld by the Court. That result is exactly the sort of adverse effect on U.S. workers that the statute is designed to prohibit.

## CONCLUSION

Plaintiffs' motion for preliminary injunctive relief should be denied. In the event that such relief is granted, the injunction should impose the conditions stated above.

Dated: July 28, 2023                  Respectfully submitted,

                                      *s/ Michael T. Kirkpatrick*
                                      Michael T. Kirkpatrick
                                      Trial Attorney
                                      D.C. Bar No. 486293
                                      Public Citizen Litigation Group
                                      1600 20th St. NW
                                      Washington, DC 20009
                                      Telephone:    (202) 588-7728
                                      e-mail: mkirkpatrick@citizen.org
                                      (*Pro Hac Vice* application forthcoming pursuant to LCvR 83.2.6)
                                      Attorney for Proposed Amici


                                      Douglas L. Stevick
                                      Texas Bar No. 0079498
                                      Texas RioGrande Legal Aid, Inc.
                                      300 S. Texas Blvd.
                                      Weslaco, TX 78596
                                      Telephone: (956) 982-5557
                                      Facsimile: (956) 591-8752
                                      e-mail: dstevick@trla.org
                                      (*Pro Hac Vice* application forthcoming pursuant to LCvR 83.2.6)
                                      Attorney for Proposed Amici Diaz Castro, Arce Ruiz, and Simpson


                                      Mary Yanik
                                      Louisiana Bar No. 36973
                                      Tulane Immigrant Rights Clinic
                                      6329 Freret St, Suite 130
                                      New Orleans, Louisiana 70118-6248
                                      Telephone: (504) 865-5153

Facsimile: (504) 862-8753
myanik@tulane.edu
*Admitted to Practice in W.D. La*
Attorney for Proposed Amici

# EXHIBIT A

**Sample of Job Orders Filed by H-2A Labor Contractors that Employ H-2A Workers to Drive Heavy Trucks**

| Case number | Employer | Employment site | Dates of work | # and type of workers requested | Non-FLS job duties listed |
|---|---|---|---|---|---|
| H-300-23152-069717 | Cajun Cane Farms, LLC | St. Martinville, LA | 8/15/23-1/15/24 | 74 agric. equipment workers | Haul sugarcane; repair farm equipment |
| H-300-23172-131902 | St. Mary Sugar Cooperative, Inc. (**not** joint employer) | Jeanerette, LA | 9/1/23-1/20/24 | 60 agric. equipment operators | Operating trucks to transport sugarcane from the fields to the mill operating a tractor-trailer |
| H-300-21358-786396 | Azucar, Inc. | Iowa, LA | 3/1/23-12/31/23 | 25 agric. equipment operators | Operate big trucks (18 wheelers); use company's trucks and trailers to deliver sugar cane to the mill |
| H-300-23159-091150 | GTS Services, LLC | Hagerman, NM | 8/7/23 – 5/1/24 | 8 agric. equipment operators | Transporting crops to elevators & silos; equipment repair |
| H-300-23165-109952 | R& L Greenchop, Inc. | Buhl, ID | 8/15/23 - 11/30/23 | 16 agric. equipment operators | Transporting crops to elevators & silos; equipment repair |
| H-300-22364-667555 | Black Dirt Drainage, LLC | Dows, Iowa | 3/1/23-12/20/23 | 5 general constr. laborers | Driving semis to haul equipment and grain |
| H-300-22365-667996 | Agri-Air, Inc. | Chamberlain, SD | 3/1/23-12/29/23 | 3 agric. equipment operators | Drive heavy trucks to transport produce to elevator or storage area; repair equipment |
| H-300-22354-650741 | Kaup Produce, Inc. | West Point, NE | 3/1/23-12/1/23 | 4 agric. equipment operators | Deliver seed, chemicals, water, dry fertilizer to farmers; requires use of semi trucks; repair equipment |
| H-300-23170-23336 | Cooperative Producers, Inc. | Hastings, NE | 9/1/23-12/15/23 | 10 agric. equipment operators | Haul and deliver products to customers' farms |

1

| | | | | | |
|---|---|---|---|---|---|
| H-300-22348-639398 | Precision Pumping, LLC | Rolfe, Iowa | 2/27/23-12/10/23 | 7 agric. equipment operators | Operate trucks to haul and apply fertilizer; make repairs on equipment |
| H-300-23101-920058 | JBO Harvesting, Inc. | Lake Placid, FL | 6/10/23-7/10/23 | 30 farm laborers | Drive harvested watermelons from fields to packing sheds |
| H-300-23044-767940 | S. Sanchez Harvesting, Inc. | Immokalee, FL | 4/13/23-7/10/23 | 60 farm laborers | Drive harvested vegetables from fields to packing sheds |
| H-300-22341-625949 | Agland Co Op | Wolf Point, MT | 2/15/23-11/10/23 | 3 agric. equipment operators | Driving semi trucks to local farms to spray chemicals and spread dry fertilizer on crops |
| H-300-22350-644131 | Neese, Inc. | Grand Junction, Iowa | 3/1/23-12/22/23 | 8 agric. equipment operators | Drive semi-tractor/trailer combinations to haul harvested crops from fields to their nutrient basis |
| H-300-23061-817792 | Noland Custom Agriculture LLC | Great Falls, SC | 5/1/23-7/31/23 | 2 agric. equipment operators | Drive heavy trucks to transport hay and straw to farms; drive transporter trucks to haul harvesting machinery between work sites |
| H-300-22347-636717 | PD Three Farming, Inc. | Statesville, NC | 2/16/23-12/15/23 | 16 agric. equipment operators | Truck grain, silage, fertilizer and manure with tractor trailer trucks |
| H-300-22341-617980 | Rinke Custom Harvesting, LLC | Wheaton, MN | 2/15/23-12/14/23 | 20 agric. equipment operators | Drive heavy trucks to transport produce to elevator or storage area |
| H-300-23005-684391 | Alvidrez Trucking, LLC | Dexter, NM | 3/15/23-11/15/23 | 14 agric. equipment operators | Transporting crops to elevators, silos, or other storage areas |
| H-300-23138-032667 | Giese Farms | Hoffman, MN | 8/1/23-11/30/23 | 3 agric. equipment operators | Drive grain trucks to transport crops to elevator or storage area |
| H-300-22364-666983 | Rock Bottom Custom, LLC | Kimberly, ID | 3/15/23-11/15/23 | 8 agric. equipment operators | Transporting crops to elevators, silos, or other storage areas |

| | | | | | |
|---|---|---|---|---|---|
| H-300-23044-770616 | Great Rift Transportation, LLC | American Falls, ID | 4/15/23-1/1/24 | 25 agric. equipment operators | Moves crops to storage area, drives harvesting machines between worksites |
| H-300-23152-071155 | Borgic Custom Pumping, LLC | West Liberty, IL | 8/15/23-12/16/23 | 4 agric. equipment operators | Operate trucks <26,000 lbs to haul and apply manure fertilizer to the fields |
| H-300-23152-068363 | McClure Custom Pumping, LLC | Kirkwood, IL | 8/15/23-12/23/23 | 6 agric. equipment operators | Operate trucks to haul and apply manure fertilizer to the fields |
| H-300-22350-646520 | Breinig Farms, Inc. | Arapahoe, NE | 3/1/23-12/15/23 | 16 agric. equipment operators | Drive trucks to transport product to elevator or storage areas |
| H-300-22350-645664 | Van Beek Harvesting | Pollock, SD | 3/1/23-12/31/23 | 6 agric. equipment operators | Drives truck to transport produce to storage area |
| H-300-22350-644100 | Landmark Services Cooperative, dba ALCIVIA | Cottage Grove, WI | 3/1/23-12/15/23 | 20 agric. equipment operators | Drive quad axle trucks to haul and apply fertilizer to fields |
| H-300-23009-689704 | Coteau Tiling | Revillo, SD | 3/15/23-12/15/23 | 7 agric. equipment operators | Drive and operate pickup trucks and tile delivery trucks; repair pickup and semi trucks |
| H-300-23004-682101 | NAC Trucking, LLC | Hagerman, NM | 3/15/23-11/30/23 | 9 agric. equipment operators | Transporting crops to elevators, silos, or other storage areas |
| H-300-23004-682019 | Robinson Farms, Inc. | Dexter, NM | 3/10/23-12/31/23 | 20 agric. equipment operators | Transporting crops to elevators, silos, or other storage areas |
| H-300-23004-679371 | Kuntz Manure Spreading | Quinter, KS | 3/15/23-12/30/23 | 11 agric. equipment operators | Drive trucks to transport crops to storage area |
| H-300-22365-668003 | PPI Harvesting, LLC | Sublette, KS | 3/1/23-11/30/23 | 20 agric. equipment operators | Drive heavy trucks to transport crops to storage facilities |

# EXHIBIT B

Clerk's Office U. S. Dist. Court
AT DANVILLE, VA.
F I L E D

APR 26 1985

Joyce F. Witt, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

DANVILLE DIVISION

*Civ 0 B28*
*Page 199*

| | | |
|---|---|---|
| VIRGINIA AGRICULTURAL GROWERS ASSOCIATION, INC., ET AL, | ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil Action No. 83-0146-D |
| RAYMOND J. DONOVAN, SECRETARY OF LABOR, ET AL, | ) ) ) | |
| Defendants | ) ) | |
| FREDERICK COUNTY FRUIT GROWERS ASSOCIATION, INC., ET AL, | ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil Action No. 83-0147-D |
| RAYMOND J. DONOVAN, SECRETARY OF LABOR, AND THE UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) ) | |
| and | ) ) | TEMPORARY INJUNCTION ORDER FOR 1985 |
| CEDRICK TURNER, VINCENT CLARK AND GENE R. REEDER, | ) ) ) | |
| Defendant- Intervenors | ) ) ) | |

On January 30, 1984; February 22, 1984; and May 24, 1984, this Court issued Temporary Injunction Orders regarding the establishment of certain escrow accounts in the name of the Regional Administrator, Employment and Training Administration, United States Department of Labor (DOL) as trustee, into which all Plaintiffs or their

*EXHIBIT 1*

constituent members in these consolidated actions were to
deposit, during the pendency of this litigation, the dif-
ference between wages paid agricultural workers in 1983 and
1984 and the minimum applicable hourly Adverse Effect Wage
Rates (AEWRs) established by DOL using the ES-202 data based
methodology, 20 C.F.R. § 655.207(b), at issue in this
litigation.

Defendants-Intervenors have, by Motion dated
January 30, 1985, in which the DOL has joined, requested
that this Court modify its previously referred to Injunction
Orders to require the continued escrowing of unpaid AEWR
wages through 1985 and until the ES-202 methodology regu-
lation is upheld and/or AEWR rates applicable to Plaintiffs
are established by DOL using another methodology.

The Court, having heard and considered the
representations of counsel for all parties in these conso-
lidated actions, has concluded that the orderly processing
by DOL of Plaintiffs' criteria clearance orders and applica-
tions for certification to use temporary foreign workers
requires the supplementing of the previous Injunction
Orders, and does hereby supplement its Injunction Orders of
January 30, 1984; February 22, 1984; and May 24, 1984.

WHEREFORE, it is ORDERED, ADJUDGED and DECREED:

1. That the Governmental Defendants, their
agents, servants, employees and attorneys are hereby
enjoined from rejecting criteria Clearance Orders (Job
Offers) of Plaintiffs or their constituent members,

- 2 -

EXHIBIT 1

submitted during 1985 and/or until such time as the ES-202 data based methodology for indexing changes in this Adverse Effect Wage Rates (AEWRs) is upheld or a new AEWR methodology established, on the ground that such criteria Clearance Orders do not comply with the AEWR requirements of 20 C.F.R. § 655.207(b).

    A.   PROVIDED HOWEVER, that each and every criteria Clearance Order submitted by Plaintiffs, or any of their constituent members, shall contain with respect to the wage rate to be paid, the following:

> Employer agrees to pay all workers employed in the 1985 season at the 1985 AEWR when it is established. This requirement will operate prospectively only from the date the 1985 AEWR is established.

    B.   PROVIDED FURTHER, that Plaintiffs, or any of their constituent members, as a condition precedent to having their criteria Clearance Orders accepted by the Governmental Defendants pursuant to this Order, shall establish an interest-bearing escrow account in a federally insured financial institution with the approval of the Governmental Defendants and in the name of the Regional Administrator of the Department of Labor's Employment and Training Administration as trustee for the employees of Plaintiffs, or any of their constituent members, commencing on a date not to exceed 45 days after Plaintiffs' earliest 1985 date of need, and shall deposit into such escrow

- 3 -

Exhibit

account on at least a monthly basis an amount equal to the following:

(1)   for Virginia, the difference between $3.81 per hour and $4.55 per hour;

(2)   for Maryland, the difference between $3.80 per hour and $4.55 per hour;

(3)   for New York, the difference between $3.48 per hour and $4.41 per hour;

for every worker employed by said employer in hourly paid positions described in its criteria Clearance Orders, for each and every hour said worker(s) was employed during the previous pay period for the entire period of employment.

After the 1985 AEWR is published, Plaintiffs or their constituent members will deposit into such escrow accounts the difference between the 1981 AEWR ($3.81 per hour in Virginia, $3.80 per hour in Maryland, and $3.48 per hour in New York) and the applicable 1985 AEWR.

Plaintiffs, or any of their constituent members, who pay by the piece-rate shall deposit into the escrow accounts on at least a monthly basis an amount equal to the following:

the difference between the piece-rate paid and the higher piece-rate required by the application of the 1985 piece-rate equivalent of the 1985 AEWR established pursuant to 20 C.F.R. § 655.207(c).

for every worker employed by said employer in positions paid on a piece-rate described in its criteria clearance orders for each and every piece said worker(s) harvests during the

- 4 -

EXHIBIT 1

previous pay period for the entire period of employment. If necessary, Plaintiffs or their constituent members shall also escrow an amount sufficient to bring each piece-rate worker's hourly earnings up to the 1985 AEWR level. This requirement will operate prospectively from the date the 1985 AEWR is established.

Alternatively, Plaintiffs, or any of their constituent members, as a condition precedent to having their criteria Clearance Orders accepted by the Governmental Defendants pursuant to this Order, may furnish said Governmental Defendants with irrevocable bank letters of credit to secure the payment for each and every worker reasonably expected to be employed under such criteria Clearance Orders by Plaintiffs, or any of their constituent members, in an amount equal to the difference between wages paid and AEWRs respectively for Virginia, Maryland and New York as set forth above, for each hour such worker works during the period of employment. The letter of credit will also cover all interest due on such back wages. If a letter of credit is used, all of the other requirements of this Order shall be adhered to.

C.    PROVIDED FURTHER, that Plaintiffs, or their constituent members, shall obtain the names and addresses of all workers on whose behalf money is escrowed, and shall distribute to all such workers a copy of a notice, to be provided by Defendants-Intervenors, which explains to the worker the nature of the escrow accounts and the

EXHIBIT

worker's obligation to report any changes in his address. The disposition of funds owed to workers who cannot be located will be determined pursuant to applicable escheat laws but in no case will said monies be returned to the Plaintiffs or their constituent members.

D. PROVIDED FURTHER, that for each 1984 employee as to whom Plaintiffs or their constituent members escrowed the difference between the wages paid and the applicable 1983 AEWR for work performed in 1984, instead of the difference between the wages paid and the 1984 AEWR, the Plaintiffs shall also deposit into the escrow accounts described in Paragraph 1.B, above, on at least a monthly basis, the following sum: (i) for Virginia, $0.16 per hour; (ii) for Maryland, $0.17 per hour; (iii) for New York, $0.21 per hour, for each hour worked by each employee during that month in 1984, so that, by the end of each calendar month in 1985, Plaintiffs shall have paid into the escrow account the appropriate wage differential covering the total employee-hours for which wages were paid in the corresponding month during 1984.

In addition to the sums required by the preceding paragraph, Plaintiffs shall include a sum representing interest paid on the amounts identified. The interest rate charged is the "Treasury rate", which for the period is nine percent (9%). Simple interest will be charged at 30-day intervals at one-twelfth of the annual rate, so that the rate to be assessed at 30-day intervals is 0.75 percent.

- 6 -

EXHIBIT

This 9% annual rate will apply only until all funds due, principal and interest, are deposited into the escrow account.

These retroactive contributions shall be made on behalf of each 1984 employee regardless of whether that employee is employed by Plaintiffs or any of their constituent members in 1985.

E. PROVIDED FURTHER, that the Plaintiffs shall provide to the Regional Administrator, on at least a quarterly basis, a written report of the quarter's escrow deposits. The initial report submitted to the Regional Administrator shall contain the employer's name and address; the name, any foreign address and any additional identification in the possession of the employer of each worker; the number of hours worked per week during the reporting period; and the amount of money escrowed on his behalf. All subsequent quarterly reports need only set forth the name of the worker, his hours worked per week, and the amount of money escrowed on his behalf. If the employer's regular payroll records reflect this information, they will satisfy this requirement.

F. PROVIDED FURTHER, that Plaintiffs, or any of their constituent members, qualify in all other respects for the acceptance and processing by the Governmental Defendants of their criteria Clearance Orders; specifically including, but not limited to, compliance by Plaintiffs or each of their constituent members, with the terms and

EXHIBIT F

conditions of this Court's Injunction Orders of January 30, 1984; February 22, 1984, and May 24, 1984, (hereinafter "1984 compliance"). This paragraph shall not operate to expand, contract, or adjudicate the nature or extent to the Regional Administrator's authority to accept, process, or reject criteria clearance orders or to grant or deny temporary labor certification on the grounds other than those specifically addressed in this Order.

Pending completion of the trustee's review of the Plaintiffs 1983 and 1984 escrow accounts as ordered below (hereafter "1984 review"), DOL will not reject Plaintiffs' clearance orders or withhold 1985 temporary labor certifications based on Plaintiffs' lack of 1984 compliance provided that, prior to certification Plaintiffs or their constituent members or their attorneys provide the Regional Administrator with written assurance of their 100% 1984 compliance (with the exception of the payments discussed in paragraph I.D. above, which monies are not due until 1985). Any of Plaintiffs or constituent members who do not provide assurance of 1984 compliance shall be ineligible for temporary labor certification until such time as the assurance is given.

2. It is FURTHER ORDERED that the following timetable shall be established for completion of the trustees' 1984 review:

A. To the extent such information has not

*Exhibit A*

already been provided, on or before the close of business on April 29, 1985, all Plaintiffs or their constituent members shall provide to the Regional Administrator a written accounting of their 1984 compliance by completing the United States Department of Labor Farm Worker Escrow Accounting forms, Parts I and II, attached hereto as Exhibits I and II or any reasonable facsimiles containing the same information.

B. Upon receipt of the information to be provided pursuant to Paragraph 2.A., above, the Regional Administrator shall review Plaintiffs' 1984 compliance, and shall issue a preliminary report by serving a copy upon counsel of record no later than the close of business on May 20, 1985.

C. The parties shall have until the close of business on May 31, 1985, in which to serve upon the Regional Administrator, in writing, any objections to the preliminary report.

D. After consideration of any such written objections, the Regional Administrator shall issue to counsel of record a final report on Plaintiffs' 1984 compliance on June 10, 1985.

3. It is FURTHER ORDERED that any distributions or disbursements from any escrow account established pursuant to this Order shall be made only upon application to and approval by this Court. Upon a decision by the Fourth

- 9 -

*ExHiBiT h*

Circuit Court of Appeals and a mandate issued pursuant to that decision, the parties hereto should apply to the Court for an Order directing the trustee how to distribute the funds held in the escrow account.

The Clerk is directed to send certified copies of this Order to all counsel of record.

ENTER this ____26ͭͪ____ day of April, 1985.

_____
United States District Judge

A TRUE COPY, TESTE:

Joyce F. Witt, Clerk

By: _____
Deputy Clerk

- 10 -

EXHIBIT A

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*Signed by
Judge Richey
as modified
9-8-83*

)
NAACP, JEFFERSON COUNTY BRANCH, et al.,    )
)
Plaintiffs,    )
)
)
v.    )     Civil Action
)     No. 82-2315
THE HONORABLE RAYMOND J. DONOVAN,    )
SECRETARY, UNITED STATES DEPARTMENT    )
OF LABOR, IN HIS OFFICIAL CAPACITY, et al.,    )
)
Defendants.    )
)

## ORDER

This matter having come before the Court on plain-
tiffs' motion for further relief to enforce the Court's order
of June 28, 1983, and the Court having considered the motion
and the arguments of counsel, and having determined (i) that
defendants have certified, agreed to certify, and intend to
certify the applications of growers who offer piece rates
lower than those required by the sixth operative paragraph
of the Court's order of June 28, 1983, (ii) that defendants as
of the date of this Order have neither requested modification
of the requirements of the sixth operative paragraph of the
June 28th order nor made a showing justifying such a modifica-
tion, (iii) that there is substantial doubt that defendants
could supersede this Court's order simply by promulgating a
new regulation without obtaining modification of that order,
and further substantial doubt that the regulation published on

September 2, 1983, purportedly amending 20 C.F.R. § 655.207(c) was adopted in conformity with the Administrtative Procedure Act, and (iv) that unless relief is granted as specified below, members of the plaintiff class will suffer injury for which they will have no adequate remedy at law, it is, on this ____ day of September, 1983, ORDERED AND ADJUDGED:

1.   The effective date of the proposed revision of 20 C.F.R. § 655.207(c) published in the Federal Register on September 2, 1983, is hereby suspended indefinitely pending further order of the Court.

2.   All officials and employees of the Department of Labor ("DOL") are enjoined from granting any application for temporary labor certification of agricultural workers under the (H)(2) program (hereafter "certification") unless the grower-employer agrees (i) to pay each employee the amount to which the employee is entitled under the Court's order of June 28, 1983, or (ii) to pay each employee at least the amount to which he would be entitled under the above-referenced rule published in the Federal Register on September 2, 1983, and, in addition to place in escrow, as described in and subject to the conditions of paragraph 6 below, the difference between the amount to which the employee is entitled under the Court's order of June 28, 1983, and the amount actually paid.

3.   DOL shall withdraw any certification previously issued to any employer-grower who has not offered and agreed to pay agricultural workers the amounts to which they are

entitled under the Court's order of June 28, 1983, if the Immigration and Naturalization Service ("INS") has not yet approved all appropriate entry visas for foreign workers to be employed by such a grower-employer in connection with such applications, unless and until the grower-employer has agreed to the conditions set forth in paragraph 2 of this order.

4. DOL shall forthwith notify each grower-employer who has been granted certification without offering and agreeing to pay agricultural workers the amounts to which they are entitled under the Court's order of June 28, 1983, and in connection with whose application INS has approved all appropriate entry visas, that such grower-employer will be denied certification in 1984 and subsequent years unless it agrees to the conditions set forth in paragraphs 2 or this order.

5. DOL shall promptly provide notice of the terms of this order to each grower that has any application for certification pending or that has been granted certification on or after June 28, 1983. In addition, DOL shall arrange for publication of such notice in the Federal Register as soon as possible.

6. The escrow payments applicable to paragraphs 2 through 4 of this order shall be made and distributed as follows:

a) The grower-employer shall establish an interest-bearing bank account in a federally insured financial

- 3 -

institution in which the grower-employer will deposit on a
weekly basis the appropriate differential amount for each
employee.  The account shall be established with the approval
of and in the name of the local Regional Administrator of
DOL's Employment and Training Administration as trustee for
the employees of the grower-employer.  The Regional Administra-
tor shall be responsible for assuring compliance with the
provisions of this paragraph 6,

        b)  If upon disposition of plaintiffs' Motion
For Further Relief To Enforce The Court's Order of June 28,
1983, filed on September 6, 1983, it appears that the em-
ployees of a grower-employer have received all wages to which
they are entitled, the Court will direct that the funds in the
account will be returned with accrued interest to the grower-
employer.

        c)  If upon disposition of said motion it
appears that the employees of a grower-employer have received
less than the wages to which they are entitled, the Court will
direct that the funds in the account be distributed to the
employees in the amount equal to the wages due plus accrued
interest.  Any balance to which the employees are not entitled
will be refunded to the grower-employer.

        d)  The Regional Administrator shall require
a grower-employer to use its best efforts to locate all
employees entitled to receive funds from the account.  If any
employee entitled to a payment cannot be located, the Regional

- 4 -

Administrator, through DOL, shall so report to the Court. Any such funds that cannot be distributed directly to the employees entitled to them shall not revert to the grower-employer, and the Court by further order will determine their appropriate disposition.

United States District Judge

- 5 -

# EXHIBIT D

U. S. DISTRICT COURT
FILED AT MARTINSBURG, W. VA

AUG 28 1985

E. LOWELL MARKEY
CLERK

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TRI-COUNTY GROWERS, INC., )
JOHN CUSHHWA, DOUGLAS DIRTING, )
LLOYD LUTMAN, WILLIAM KILMER, )
RICHARD W. BLIZZARD, RICHARD )
LOWMAN, CHARLES LEWIS, and )
TURNER RAMEY, )
)
　　　　Plaintiffs, )
)
　　v. )　　CIV. NO. 85-0038-M
)
WILLIAM E. BROCK, Secretary of )
Labor, and WILLIAM J. HALTIGAN, )
Regional Administrator for )
Employment and Training, )
United States Department of )
Labor, et al )
　　　　Defendants. )

## ORDER

On August 28th, 1985, the plaintiffs, Tri-County

Growers, Inc., et al, through their counsel, Clarence

Martin III, moved for a temporary restraining order,

and for temporary mandatory injunction enjoining the

defendant Secretary of Labor from denying the plaintiffs

labor certification for the admission of 575 temporary

foreign laborers.

The plaintiffs are engaged in the growing, harvesting

and shipment of apples.  The defendants Brock and Haltigan

declined to certify the need for temporary foreign apple

(3)

pickers for Tri-County Growers, Inc.  It appears that
if such pickers are not immediately provided, the plain-
tiffs will be caused immediate and irreparable injury,
loss and damage in that they will be unable to harvest
any substantial portion of their crop.

In order to maintain the status quo pending a final
determination on the merits of this case;

It is therefore ORDERED,

That the Governmental Defendants, their agents,
servants, employees and attorneys are hereby enjoined
from denying Plaintiffs or their constituent members,
labor certifications submitted during 1985 on the grounds
that plaintiffs or their constituent members are not
paying piece rates computed pursuant to 20 C.F.R. § 655.207(c)
(1978) as interpreted by National Association for the
Advancement of Colored People v. Donovan, 82-2315 (June
1983).

Plaintiffs, or any of their constituent members,
who pay by the piece-rate shall deposit into the escrow
accounts as it comes due in an amount equal to the differ-
ence between the piece-rate paid and the piece-rate
required by the application of the 1985 piece-rate regulation,
which in this case is eleven cents ($.1¢) for every box picked

by a worker employed by said employer in positions paid
on a piece-rate described in its criteria clearance
orders for each and every piece said worker(s) harvests
during the previous pay period for the entire period
of employment.

A.  PROVIDED that Plaintiffs, or any of their consti-
tuent members, as a condition precedent, shall establish
an interest-bearing escrow account in a federally insured
financial institution with the approval of the Governmental
defendants and in the name of the Regional Administrator
of the Department of Labor's Employment and Training
Administration as trustee for the employees of Plaintiffs,
or any of their constituent members, commencing on a
date not to exceed 14 days after Plaintiffs' earliest
1985 date of need, and shall deposit into such escrow
account to the difference between the piece-rate paid
and the piece-rate required by the application of the
1985 piece-rate regulation, which is this case is ~~ten eleven~~
cents ($.~~10~~ .11) for every unit picked, at the time the
employer actually pays wages to every employee paid
on the piece rate.

Alternatively, Plaintiffs, or any of their constituent
members, as a condition precedent to having their criteria
Clearance Orders accepted by the Governmental Defendants
pursuant to this Order, may furnish said Governmental
Defendants with irrevocable bank letters of credit to
secure the payment for each and every worker reasonably

expected to be employed under such criteria Clearance

Orders by Plaintiffs, or any of their constituent members,

in an amount equal to the difference between wages paid.

The letter of credit will also cover all interest due

on such back wages.  Interest shall be computed as if

payments had been escrowed.  If a letter of credit is

used, all of the other requirements of this Order shall

be adhered to.

The sum required by the preceding paragragh shall

include the amount representing interest paid on the

amounts identified.  The interest rate charged is the

"Treasury rate", which for the period is nine percent

(9%).  Simple interest will be charged at 30-day intervals

at one-twelfth of the annual rate, so that the rate

to be assessed at 30-day intervals is 0.75 percent.

This 9% annual rate will apply only until all funds

due, principal and interest, are deposited into the

escrow account.

B.  PROVIDED FURTHER, that Plaintiffs, or their

constituent members, shall obtain the names and addresses

of all workers on whose behalf money is escrowed (or

for whom payments are secured by letters of credit).

C.  PROVIDED FURTHER, that Plaintiffs, or their

constituent members, shall prepare and distribute to

all workers a notice which explains to the worker the

- 5 -

nature of the escrow accounts and the worker's obligation to report any changes in his address. This notice shall be approved by the Regional Administrator prior to its distribution. The disposition of funds owed to workers who cannot be located will be determined pursuant to applicable escheat laws but in no case will said monies be returned to the Plaintiffs or their constituent members.

D.   PROVIDED FURTHER, that the Plaintiffs shall provide to the Regional Administrator a written report of the escrow deposits thirty (30) days after the completion of the harvest season but no later than *December 31, 1985*. This report shall contain the employer's name and address; the name, the social security number, mailing address, any foreign address and any additional identification in the possession of the employer of each worker; the number of hours worked per week and the number of units picked for each week during the harvest season and the amount of money escrowed on his behalf.

The Clerk is directed to sent certified copies of this Order to all counsel of record.

ENTER this *28th* day of August, 1985.

I hereby certify that the annexed
instrument is a true and correct
copy of the original filed in my
office.
ATTEST: E. LOWELL MANRY
Clerk, U. S. District Court
Northern District of West Virginia

By _____
            Deputy Clerk

_____
United States District Judge