UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TECHE VERMILION SUGAR CANE GROWERS ASSOCIATION, INC.; CORA TEXAS GROWERS AND HARVESTERS AGRICULTURAL ASSOCIATION, INC.; AMERICAN SUGAR CANE LEAGUE; FOUR OAKS FARM, GP; GONSOULIN FARMS, LLC; TOWNSEND BROTHERS FARM, INC.; and JOHN EARLES, Plaintiffs, | CIVIL ACTION NO. 6:23-cv-00831<br><br>JUDGE ROBERT R. SUMMERHAYS<br><br>MAGISTRATE JUDGE CAROL B. WHITEHURST |
| V. | |
| JULIE A. SU, Acting Secretary of Labor, in her official capacity; BRENT PARTON, Principal Deputy Assistant Secretary of Labor, in his official capacity; BRIAN PASTERNAK, Administrator of the Employment and Training Administration, Office of Foreign Labor Certification, in his official capacity; JESSICA LOOMAN, Action Administrator, Wage and Hour Division, in her official capacity, Defendants. | |

_____

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' APPLICATION
FOR PRELIMINARY INJUNCTION**
_____

MAY IT PLEASE THE COURT,

Plaintiffs Teche Vermilion Sugar Cane Growers Association, Inc., Cora Texas Growers and Harvesters Agricultural Association, Inc., American Sugar Cane League, Four Oaks Farm, GP, Gonsoulin Farms, LLC, Townsend Brothers Farm, Inc., and John Earles (collectively "Plaintiffs") have filed an Application for a Preliminary Injunction (the "Application") challenging enforcement of a final rule "revising the methodology by which it determines the hourly Adverse Effect Wage Rates ["AEWR"] for non-range occupations," published at 88 Fed. Reg. 12,760 (Feb. 28, 2023) and codified at 20 C.F.R. § 655.120(b) (the "Final Rule").  Defendants, all officers of the United States Department of Labor sued in their official capacity (the "DOL"), have filed an opposition to the Application, Doc. No. 21 (the "Opposition").  Pursuant to this Court's order of July 18, 2023 (Doc. No. 17) and Local Rule 7.8, Plaintiffs now submit this reply.

## I. Plaintiffs are Likely to Succeed on Their APA Claims

### A. The Opposition Raises Points Inapposite to Plaintiffs' Complaint and Cannot Refute Plaintiffs' Evidence

DOL emphasizes that the statutory scheme grants it discretion to determine how best to protect "similarly situated" domestic workers from adverse wage impacts and submits that its method of calculating the AEWR is a reasonable one.  What DOL neglects is that this discretion exists only to the extent that the working conditions or wages of domestic workers "similarly employed" to H-2A workers are suffering "adverse effects."  As the Fifth Circuit has stated,

> Even if desirable, the Secretary has no authority to set a wage rate on the basis of attractiveness to workers.  ***His authority is limited to making an economic determination of what rate must be paid all workers to neutralize any 'adverse effect' resultant from the influx of temporary foreign workers.***[1]

---

[1] *Williams v. Usery*, 531 F.2d 305, 306 (5th Cir. 1976) (emphasis supplied).  This language from *Williams* was quoted, specifically as binding Fifth Circuit precedent, several times in Plaintiffs' original memorandum, at pages 2 and 16.  The Opposition fails to even address the case.

The Opposition addresses hypothetical challenges to how DOL calculates the AEWR, including categorical challenges to its use of Occupational Employee Wage Statistics ("OEWS") survey data rather than data from the Farm Labor Survey ("FLS").[2] These submissions are inapposite to Plaintiffs' challenge. Plaintiffs' dispute is with DOL's unprecedented attempt to reclassify, for wage purposes, truck drivers in the agricultural sector (SOC Code 45-2091 (Agricultural Equipment Operators)), as long-haul truckers in the general economy (SOC Code 53-3032 (Heavy and Tractor-Trailer Truck Drivers)). Under the Final Rule, it is this reclassification which permits DOL to set a wage-rate for agricultural work based not upon FLS data specific to the agricultural industry, but rather upon OEWS data concerning non-agricultural positions in the general economy.

Traditionally, temporary foreign workers who are employed to act as long-haul truckers are not hired under the H-2A program, because long-haul trucking is not an agricultural occupation. Rather, those truck drivers are hired under the H-2B program applicable to non-agricultural employment, and paid a wage commensurate with that of other truck drivers in the general economy.[3] Plaintiffs do not dispute that, if they employed workers to haul cargo long distances on an annual basis under the H-2B program, the requirements applicable to such truck driving (including the special license, training, certification, and other requirements imposed by law on such employment) would apply, and Plaintiffs would have to pay those H-2B workers a wage commensurate with other long-haul truckers.

---

[2] *See* Opposition, at 14-16. While there are problems with using OEWS data in favor of FLS data when agricultural occupations are involved, those are not problems present in this case. Louisiana has a significant agricultural sector, and thus FLS data is readily available for the State of Louisiana.

[3] This conflation of the H-2A and H-2B programs was discussed on Pages 18-19 of Plaintiffs' original memorandum. DOL's view in 2010 was that "[a] regulation that allows H-2A workers and H-2B workers to perform the same activity is inconsistent with Congressional intent." 75 Fed. Reg. 6888 (Feb. 12, 2010). DOL provides no response to this briefing and no explanation as to how the conflation of H-2A and H-2B employment under the Final Rule is consistent with Congressional intent.

However, that is not what is happening here. The Final Rule raises the wages paid for traditional agricultural employment to the higher level of wages paid for a non-agricultural position. Under the statutory scheme, this is permissible only if long-haul truckers (the pertinent non-agricultural workers) are "similarly employed" to agricultural truck drivers. Plaintiffs have presented extensive evidence, including declarations from fact and expert witnesses,[4] citations to federal and state driving regulations,[5] and the contents of the Government's own SOC classification system[6] that clearly demonstrate truck drivers in the agricultural sector are ***not*** "similarly employed" to long-haul truckers in the general economy. Rather, the duration (seasonal rather than annual), location (rural rather than urban), and necessary skill set and tasks (the special license, training, certification, and reporting requirements required for long-haul trucking but not agricultural truck driving) clearly distinguish the two occupations.

DOL's only response to these submissions is to reiterate its "view" that agricultural truck drivers and long-haul truckers perform the same work.[7] No reasons are given, in the Opposition or the Final Rule, to justify this conclusion.[8] Furthermore, DOL represents that "the 2023 Final

---

[4] Original Memorandum, Exhibit A, ¶¶ 13-15, 17, 19, 21; Exhibit B, ¶¶ 9, 13-14; Exhibit C, ¶¶ 6, 8, 10-11, 17-20; Exhibit D, ¶¶ 10, 12-13, 15, 17, 20; Exhibit E, ¶¶ 10-11, 13, 16, 19, 20, 23-24; Exhibit F, ¶¶ 4, 10-17, 20; Exhibit G, ¶¶ 12, 14; Exhibit H, ¶¶ 4, 12-13, 15-42.
[5] Original memorandum, at 6.
[6] Original memorandum, Exhibit N *in globo*. As stated in Plaintiffs' original memorandum, the tasks associated with SOC Code 45-2091 include "drive trucks to haul crops, supplies, tools, or farm workers." No similar task is associated with the SOC Code for long-haul truckers, SOC Code 53-3032 (Heavy and Tractor-Trailer Truck Drivers). This fact is pertinent because the SOC classification system recognizes when work performed in the agricultural sector overlaps with work performed in the general economy. For example, SOC Code 53-7064 (Packer and Packagers, Hand) treats packing and packaging tasks as the same work regardless of the sector of the economy in which it is performed. Thus, the USDA's FLS includes SOC Code 53-7064 (Packer and Packagers, Hand) in its surveyed occupations, even though it does not contain a "45" (farming, fishing, or forestry occupation) prefix. This is not the case when it comes to truck drivers. The FLS. OEWS survey, and SOC classification system all consider agricultural truck drivers under an agricultural prefix (SOC Code 45-2091), leaving SOC Code 53-3032 (Heavy and Tractor-Trailer Truck Drivers) for truck drivers who have met the significant requirements necessary to work as a long-haul trucker. The Opposition omits any discussion of these issues.
[7] Opposition, at 14-15 (*citing* Final Rule, at 12782.
[8] The Opposition recites that DOL "addressed concerns of urban versus rural truck drivers, different weights of trucks, and different SOC codes that may be applicable for truck driving," but as a review of the Opposition and the cited page of the Final Rule reveals, the only way DOL "addressed" these concerns was to state its unsupported "view" that agricultural truck driving is the same job as long-haul trucking.

3

Rule raised hourly wages for certain H-2A workers such as managers, construction workers and truck drivers, ***to avoid depressing the hourly wages of U.S. workers***."[9] If in fact long-haul truckers had been for decades suffering wage depression due to the comparably "low" wages paid to agricultural truck drivers (a necessary predicate for the DOL to consider the wages of long-haul truckers in calculating the AEWR), DOL would be able to cite wage data reflecting an erosion in long-haul trucker wages and the concomitant need to protect those wages from future "adverse effects." But DOL cites no data, in the Opposition or the Final Rule, to support the Final Rule's changed treatment of agricultural truck drivers. Indeed, the evidence submitted to the Court on this point demonstrates that the wages paid agricultural truckers have no impact on the wages of long-haul truckers, and that in fact the wages of long-haul truckers, rather than being depressed, have been increasing at an historical rate.[10] In other words, DOL relies entirely upon *ipse dixit* to justify an approach that overturns decades of practice and runs contrary to all known relevant facts.

This is precisely the sort of unwarranted expansion of Executive authority that the APA is designed to prevent. Congress granted DOL authority to protect the wages of only a limited class of domestic workers, *i.e.*, those "similarly employed" to the agricultural workers that fall within the H-2A program. The Final Rule exceeds that authority.

### B.  The Statutory Scheme Does Not Enable the Final Rule

Nothing in the statutory scheme grants DOL the discretion to determine, as a threshold matter, the classes of domestic workers that are "similarly employed" to H-2A workers. DOL asserts that under *Chevron* its interpretation of this statutory language should be given deference

---

[9] Opposition, at 12 (emphasis supplied); *see also* Opposition, at 13 ("Offering low wages to truck drivers artificially limits the pool of U.S. workers willing to apply for such jobs . . . .").

[10] The evidence reflects that there is currently a shortage of long-haul truck drivers, and the wages of both supervisory and non-supervisory employees (drivers) in the long-haul trucking field have been increasing at roughly five times the historical average. Exhibit A, ¶ 21; Exhibit H, ¶¶ 4, 12-13, 15-42. The reasons why the wages of long-haul truckers are effectively insulated from wages in the agricultural sector are explained at length and with supporting data in the declaration of Dr. Bronars. Exhibit H, ¶¶ 4, 12-13, 15-42.

4

because it is ambiguous. However, as all parties concede, the Final Rule's interpretation of the statute upends decades of practice under which agricultural truck drivers, consistent with federal and state law and the Government's own SOC classification system, were classified under SOC Code 45-2091 (Agricultural Equipment Operators) and paid wages, appropriate to that SOC code, calculated from FLS Data.[11] On Page 13 of their original memorandum Plaintiffs pointed out that recently, in *Cargill v. Garland*, the *en banc* Fifth Circuit reiterated that the rule in this circuit is that *Chevron* deference is not owed in situations where an agency "has construed the same statute in two, inconsistent ways at different points in time."[12] The Opposition contains no discussion of this case or the doctrine it affirms. For this reason alone, no *Chevron* deference is owed.

Furthermore, even if *Chevron* were applicable, Plaintiffs' original memorandum discussed in detail precedents of the Fifth Circuit, this Court, and other federal courts that reflect the term "similarly employed" is not an ambiguous phrase, and thus not susceptible to *Chevron* deference. DOL makes no attempt to address this (in some instances binding) jurisprudence.[13]

---

[11] Original memorandum, at 3-4. According to the Opposition, DOL has relied upon the FLS survey and the data it reports to establish the AEWR since 1963. Opposition, at 3-4. The only exception to this approach occurred in 2009, when DOL attempted to utilize a precursor survey to the OEWS to set the AEWR. Opposition, at 4. This new approach was almost immediately suspended and then overturned in 2010, when the FLS was reinstated as the primary basis for calculation of the AEWR. Original memorandum, at 4 & n. 8.

[12] 57 F.4th 447, 469 (5th Cir. 2023) (en banc).

[13] While DOL has opted not to directly address Plaintiffs' submissions, DOL does suggest throughout the Opposition that *United Farm Workers v. Solis*, 697 F.Supp.2d 5 (D.D.C. 2010) undermines Plaintiffs' submission. *See* Opposition, at 4, 12, 13, 15. But DOL again misses the mark. *United Farm Workers* involved a review of DOL's efforts in 2009 to alter the AEWR formula by going to a calculation based upon the OEWS survey rather than the FLS survey (efforts that as previously noted were immediately suspended and then rescinded in 2010, after the *United Farm Workers* opinion issued, *see* Note 13). *United Farm Workers* did not involve the aspect of the Final Rule challenged here, *i.e.*, a reclassification of agricultural to non-agricultural labor. While using OEWS survey data to calculate an AEWR for H-2A workers operating under SOC Code 45-2091 (Agricultural Equipment Operators) could create issues, those are not issues pertinent to **this** case; as stated *supra*, FLS data is available for the traditional agricultural occupations in Louisiana, and thus even under the Final Rule the AEWR for **those** occupations is calculated using FLS data. Rather, the problem in this case is the reclassification of agricultural truck drivers to SOC Code 53-3032 (Heavy and Tractor-Trailer Truck Drivers) and the use of this SOC Code to calculate their wages, under any survey. Furthermore, in *United Farm Workers* the district court applied *Chevron* deference to the issue of how to calculate the AEWR because the plaintiffs failed to cite any authority indicating that the term "similarly employed" as unambiguous. 697 F.Supp.2d at 9. In this case, however, Plaintiffs have supplied copious citations to pertinent authorities, including binding circuit precedent, regarding both the inappropriateness of *Chevron* deference and the lack of any ambiguity in the relevant statutory language. *United Farm Workers* in no way validates DOL's apparent inability to counter these authorities.

The original memorandum also discussed 8 U.S.C. § 1188(c)(3)(ii), which specifies that job offers to domestic workers for the work to be performed (a necessary predicate to submission of an application for H-2A workers) must include qualifications particular to "the same or comparable occupations and crops." DOL responds with the rule of interpretation that "when Congress includes particular language in one section of a statute but omits it in another, this Court presumes that Congress intended a difference in meaning."[14] But Plaintiffs do not press any argument based upon omitted language, nor do they assert that the two provisions define precisely the same thing. Rather, Plaintiffs acknowledge that 8 U.S.C. § 1188(c)(3)(ii) and 8 U.S.C. § 1188(a)(1)(A) & (B) establish two temporally distinct classes of domestic workers, *i.e.*, the class of domestic workers who prior to an application for H-2A workers must be offered work, and the class of domestic workers who post-application must be protected from adverse wage impacts. What Plaintiffs do contend is that the Court should consider the statutory language that establishes these classes *in pari materia*, because "[n]othing in the statutory scheme suggests that the class of domestic workers Congress expressly sought to protect at the institution of the H-2A process, when actual job offers are being provided to American citizens, is more restricted than the class of 'similarly employed' domestic workers protected from 'adverse effects' during subsequent stages of the H-2 process."[15] DOL makes no attempt to explain why the "same or comparable

---

[14] *Digital Realty Trust, Inc. v. Somers*, ___ U.S. ___, 138 S. Ct. 767, 777–78, 200 L.Ed.2d 15 (2018) (brackets and ellipses omitted). The Opposition misstates the relevant rule of interpretation as "when Congress uses different language in different statutory sections, those sections are presumed to have different meanings." Opposition, at 13 (citing *Digital Realty*). There is no such rule of interpretation. *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 540, 133 S. Ct. 1351, 185 L.Ed.2d 392 (2013) ("We are not aware, however, of any canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing.").

[15] *In re Joye*, 578 F.3d 1070, 1076 n. 1 (9th Cir. 2009) ("Furthermore, our reliance on 'scholarly interpretations,' which harmonize these two provisions, is but a straightforward application of the well-established canon of statutory interpretation *in pari materia*, that similar provisions in the same statute should be interpreted in a similar manner unless legislative history or purpose suggests material differences.") (quotation marks in original) (citation omitted); *see Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638, 129 S. Ct. 1862, 173 L.Ed.2d 843 (2009) ("This Court has consistently held that § 1447(d) must be read *in pari materia* with § 1447(c), thus limiting the remands barred from appellate review by § 1447(d) to those that are based on a ground specified in § 1447(c).") (listing cases).

occupations and crops" language of 8 U.S.C. § 1188(c)(3)(ii) should not be considered in determining who is "similarly employed" under 8 U.S.C. § 1188(a)(1)(A) & (B).[16]

In short, Plaintiffs APA challenges are based upon (1) a plain and commonsense reading of the pertinent statutes, and (2) unrefuted evidence showing that the wages paid agricultural truck drivers have no impact, much less an "adverse effect," upon the wages paid long-haul truck drivers. On this showing, this Court should conclude Plaintiffs are likely to succeed on their APA claims.

## II. Plaintiffs are Likely to Succeed on Their RFA Claims

DOL submits that the head of the Employment and Training Administration ("ETA"), an "agency" under pertinent federal law, is authorized to provide the economic impact certification required by 5 U.S.C. § 605(b).[17] The only "agency" authorized to issue rules concerning the H-2A program (such as the Final Rule) is DOL; ETA does not have this authority.[18] It is the "head of the agency" that promulgates the rule at issue (the Secretary of DOL), not some other "agency," which must provide a section 605(b) certification.[19] This did not happen.

DOL also posits that its decision to rely solely and without explanation upon data which excluded the vast majority of H-2A employers does not undermine its economic analysis, because "Plaintiffs do not allege that DOL's sample was statistically insufficient or its analysis statistically

---

[16] While DOL offers no direct response to this argument, it does suggest through a series of drive-by citations that Plaintiffs' submission is undermined by *Overdevest Nurseries, LP v. Walsh*, 2 F.4th 977 (D.C. Cir. 2021). Opposition, at 2, 12, 13, 15. In *Overdevest*, domestic workers doing the same work as, but being paid less than, H-2A employees working for the same employer. The employer plaintiff contended that the term "similarly employed" was limited to persons "able, willing, and qualified" to work under 8 U.S.C. 1188(a)(1), and thus disparate pay was permissible where H-2A workers and domestic workers performed the same work but operated under different job descriptions. 2 F.4th at 982-83. The D.C. Circuit held that the term "similarly employed" was "not unambiguous in the way Overdevest claims it is" and, applying *Chevron* deference, found that DOL's regulatory authority was appropriately exercised to equalize the pay of H-2A and domestic workers performing the "same work." *Id*., at 983-84. Plaintiffs generally agree with the holding of *Overdevest*, which is cited favorably on page 16 of their original memorandum for the proposition that DOL's authority is only appropriate when H-2A and domestic workers are performing the "same work." However, the issues presented in *Overdevest* are not the issues presented by this case, and the precedents of this circuit require a different resolution on the questions of *Chevron* deference and statutory ambiguity.
[17] Opposition, at 17-18.
[18] 8 U.S.C. § 1101(a)(15)H); *see Overdevest*, 2 F.4th at 980.
[19] 5 U.S.C. §§ 602(a), 603(a), 604(a), 605(b).

incorrect."[20] The burden of demonstrating that the factual basis upon which its certification rests is reliable falls upon DOL, not Plaintiffs.[21] DOL has not shown that it can meet that burden.

### III. Plaintiffs Have Demonstrated Irreparable Injury

As set forth on page 23 of Plaintiffs' original memorandum, in the Fifth Circuit the cost of complying with a putatively invalid regulation, without more, constitutes irreparable injury. In this case, DOL's own evidence indicates that at least two Plaintiffs (Teche Vermilion and Cora Texas) have already had nearly 500 H-2A workers reclassified under the final rule from agricultural truckers (SOC Code 45-2091 – Agricultural Equipment Operators) to long-haul truckers (SOC Code 53-3032).[22] As per the declarations of these Plaintiffs, this amounts to more than $5 million in increased costs to these two Plaintiffs, for trucking the crop from the field to the mill, during this year's harvest season alone.[23] And this is only the beginning, because, as DOL's own evidence reflects, many of Plaintiffs' applications have not yet been certified, and of course all Plaintiffs continue to run the risk of reclassification due to DOL audits.[24]

DOL submits that, despite a demonstrable economic injury as to which no adequate remedy in law exists, Plaintiffs have not shown irreparable injury. DOL first points to Plaintiffs' ostensible "delay" in filing their lawsuit and preliminary injunction application.[25] As Plaintiffs have explained, they were hopeful that developments in other litigation might obviate the need for this lawsuit. While DOL refers to this as "a desire to freeride off another's lawsuit,"[26] in truth it is

---

[20] Opposition, at 19 n. 7.
[21] *National Federation of Independent Business v. Perez*, 2016 WL 3766121, *37-39 (N.D. Tex. June 27, 2016).
[22] Doc. No. 21-1.
[23] Exhibit B, ¶¶ 8-23; Exhibit C, ¶¶ 9-12.
[24] Doc. No. 21-1.
[25] Opposition, at 20-21.
[26] To the extent DOL suggests Plaintiffs have relied upon the briefing in these other cases, this comment is misplaced. Unlike these other actions, this lawsuit is not concerned with the costs to agricultural employers in the nation, but rather focuses exclusively upon the impact on employers, and in particular sugar cane producers, in the State of Louisiana. As the record before the Court reflects, Plaintiffs had to spend significant time to develop legal arguments specific to this circuit and this case, and harvest facts specific to the Louisiana sugar cane industry, before its complaint and application could be filed.

merely Plaintiffs' respect for the policy against duplicative litigation which permeates federal jurisprudence. Furthermore, as previously stated many of Plaintiffs' H-2A applications have not yet been reviewed and certified, and moreover no artificially inflated wages have yet been paid. Had Plaintiffs filed this suit earlier, they would doubtless have encountered the same ripeness and standing challenges DOL has asserted against plaintiffs in the other lawsuits challenging the Final Rule. However, a brief delay in filing suit has obviated those challenges. Nothing in the timing of this suit suggests a lack of irreparable injury.

DOL also asserts that more than $5 million in estimated costs is not significant enough to constitute irreparable injury.[27] In particular, DOL questions whether an impact of $1.50 of increased costs per ton of sugarcane indicates that Plaintiffs' injury is more than *de minimis*.[28] Not only have Plaintiffs produced specific estimates of their own increased costs, the evidence reflects that more than 500,000 acres, containing more than 17 million tons of sugar cane, will be produced in the State of Louisiana in 2023.[29] This reflects total increased, nonrecoverable costs to the sugar cane farmers of the State of Louisiana of more than $25 million (again, solely for trucking the crop from the field to the mill). DOL's submission is meritless.

### IV. The Balance of Equities and Public Interest Favor Plaintiffs

As set forth in Plaintiffs' original memorandum, in litigation of this sort these two factors correlate with the element of likelihood of success on the merits. If Plaintiffs have proven that the Final Rule is likely invalid under either the APA or the RFA, these factors run in favor of Plaintiffs, because there is no legitimate public or equitable interest in the enforcement of an invalid rule.

---

[27] DOL submits that it has determined "most employers" in the United States will not have increased costs. Opposition, at 21. Be that as it may, the evidence before the Court clearly reflects the impact on Louisiana agricultural employers, and in particular sugar cane producers, is severe.
[28] Opposition, at 21-22.
[29] Exhibit A, ¶ 21; Exhibit G, ¶ 9; Exhibit I & exh. 2.

DOL does not controvert this submission, but rather re-urges its incorrect view of the Final Rule.[30] Under this circuit's precedents, if this Court agrees Plaintiffs are likely to succeed on the merits of any one of its claims, these factors also support the issuance of a preliminary injunction.

### V. DOL is Not Entitled to a Bond that Secures Unpaid Wages Under a Rule That is Likely Invalid

Finally, DOL asks this Court to require Plaintiffs, if they successfully prove that they are likely to succeed in proving that the Final Rule is invalid, to nonetheless pay the wages that would be due under that rule into escrow.[31] DOL posits that "a similar bond" was imposed in an Eleventh Circuit case, *Florida Fruit & Veg. Ass'n v. Brock*, 771 F.2d 1455, 1460 (11th Cir. 1985).

Federal Rule of Civil Procedure 65(c) provides for security when a preliminary injunction issues, but only security "in an amount that the court considers proper to pay the costs and damages sustained **by any party found to have been wrongfully enjoined or restrained**." The purpose of this provision is "to protect the restrained party from damages incurred by that party as a result of the wrongful issuance of an injunction."[32] Nothing in this statute authorizes a Court, in conjunction with a preliminary injunction hearing, to impose an obligation upon a party to post security in favor of persons who are not enjoined or restrained by any court order. Rather, such relief requires a merits determination that some liability is owed. This is evident from the *Brock* case DOL relies upon, which did not concern a preliminary injunction bond, but rather a supersedeas bond posted to defer the effect of a merits judgment during appeal. No bond is warranted in this case.

### VI. Conclusion and Relief Requested

For the reasons set forth in their original memorandum and in this reply, this Court should grant their application and issue the requested preliminary injunction.

---

[30] Opposition, at 22-24.
[31] Opposition, at 24.
[32] *Storck USA, L.P. v. Farley Candy Co., Inc.*, 797 F. Supp. 1399, 1414 (N.D. Ill. 1992).

Dated: August 4, 2023

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: */s/ J. Walter Green*
J. Walter Green, T.A. (#27812)
Brandon E. Davis (#29823)
A. Paul LeBlanc, Jr. (#23186)
Marcellus D. Chamberlain (#917498)
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: walt.green@phelps.com
davisb@phelps.com
paul.leblanc@phelps.com
marcellus.chamberlain@phelps.com

*Counsel for Plaintiffs Teche Vermilion Sugar Cane Growers Association, Inc., Cora Texas Growers and Harvesters Agricultural Association, Inc., American Sugar Cane League, Four Oaks Farms, Gonsoulin Farms, Triple E Farms, and Townsend Brothers Farms*